# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-311-RJC-DSC

| | |
|---|---|
| DOUGLAS P. EHMANN, | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| v. | ) |
| DUKE ENERGY CAROLINAS LLC and JOSEPH R. KLUTZ III, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss," Doc. 22, filed December 1, 2020 and the parties' associated briefs, Docs. 22, 27-28.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Taking the facts of the Amended Complaint as true, Plaintiff owns Lot 9 in the Tranquil Cove Subdivision ("Ehmann Property") which borders the shoreline of Lake Norman. Lake Norman is a reservoir of water maintained by Duke Energy under license from the Federal Energy Regulatory Commission (FERC). The license issued to Duke Energy by FERC requires Duke to promulgate a Shoreline Management Plan ("SMP") for Lake Norman which incorporates

Shoreline Management Guidelines ("SMG"). The SMP and SMG are approved by FERC and subject to its authority. The SMP and SMG allow Duke Energy to issue permits for docks and other recreational facilities on Lake Norman.

After purchasing the Ehmann Property, Plaintiff applied for a Private Facilities Permit to build a dock. By letter on January 7, 2008, Duke Energy approved the application and issued the permit. Thereafter, Plaintiff constructed a dock extending over the lands and water of Lake Norman. In November 2018, Plaintiff's landscaping crew inadvertently cut a tree near the shoreline and trimmed another tree. On December 11, 2018, Duke Energy revoked Plaintiff's permit, ruled the property be sterilized for five years during which no permit could be requested, and ordered Plaintiff to remove the dock.

Duke Energy informed Plaintiff that the permit was being revoked because removal of trees and vegetation "within the Project Boundaries of Lake Norman is a violation of the Duke Energy-Shoreline Management Guidelines (SMG)." Doc.1 at ¶ 18, Ex. B. Duke Energy further advised Plaintiff that he must submit a restoration plan "detailing how [Plaintiff] will restore the Project Boundaries back to its original condition" and stated that the "applicable penalty for this specific violation includes the removal of the pier/dock from Project property and the loss of consideration for lake use permitting activities for five (5) years, subject to successful plant restoration." Id. Plaintiff submitted a restoration plan which Duke Energy rejected because it did not include removal of the dock. Despite revocation of the permit, Plaintiff has refused to remove the dock.

Plaintiff claims that Duke Energy, through its employee Kluttz, improperly "demanded a hold on any building permit for the Ehmann Property" issued by "the appropriate authorities in Mecklenburg County, North Carolina" and/or "plac[ed] a hold on any building permits for the Ehmann Property." He also alleges that Duke Energy and Kluttz are "without any authority

whatsoever" to demand that Mecklenburg County place such a hold on any building permits. (Id.) Plaintiff claims that this purported communication with unidentified Mecklenburg County "authorities" interfered with the contract he entered into with a builder in January 2019 to construct a house on his property.

On June 7, 2019, Plaintiff filed his Complaint in Mecklenburg County Superior Court. He asserted claims against Duke Energy for declaratory judgment, breach of fiduciary duty, breach of contract, and unfair and deceptive trade practices. He also asserted a claim for interference with contract against Duke Energy and Kluttz, individually and as an employee of Duke Energy. On July 5, 2019, Defendants removed the case to this Court.

On February 27, 2020, the Court dismissed Plaintiff's claims for breach of fiduciary duty, interference with contract, and unfair and deceptive trade practices with prejudice. The Court dismissed Plaintiff's claim for breach of contract without prejudice. Plaintiff filed an Amended Complaint on November 17, 2020 re-asserting his claim for breach of contract.

Defendants filed the instant Motion to Dismiss on December 1, 2020 seeking dismissal of Plaintiff's claim for breach of contract pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked

by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

#### A. Breach of Contract Claim

To state a claim for breach of contract under North Carolina law, a plaintiff must allege (1) the existence of a valid contract and (2) breach of the terms of the contract. McCabe v. Abbott Labs., Inc., 47 F. Supp. 3d 339, 345 (E.D.N.C. 2014). "A contract is the agreement of two minds—the coming together of two minds on a thing done or to be done." Shepard v. Bonita Vista Properties, L.P., 664 S.E.2d 388, 397 (N.C. App. 2008). "A contract, express or implied, requires assent, mutuality, and definite terms." Schlieper v. Johnson, 672 S.E.2d 548, 553 (N.C. App. 2009). "There is no contract unless the parties assent to the same thing in the same sense." Williams v. Jones, 366 S.E.2d 433, 438 (N.C. 1988).

The law of the case doctrine provides that "earlier decisions of a court become law of the case and must be followed unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would manifest injustice." Yates v. Ford Motor Co., 143 F. Supp.3d 386, 388 (E.D.N.C. 2015) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)). A court's decision will "continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).

> The Court has previously found the January 7, 2008 letter is not a contract.
>
> It contains none of the terms or promises Plaintiff now claims Duke Energy has breached. This letter merely informed Plaintiff that his permit application had been approved and that he could proceed with construction of the dock within the parameters stated in the letter. Nothing in the letter grants Plaintiff any property rights or right to use the dock indefinitely or without any conditions or restrictions. Additionally, nothing in the letter prohibits Duke Energy from revoking the permit at any time for any reason or requiring Plaintiff to remove the dock from its property. See Doc. 1-1, Ex. A. While Plaintiff alleges the existence of a "contractual relationship" based upon the letter, no such agreement was entered into between Plaintiff and Duke Energy. See Schlieper, 672 S.E.2d at 553 (holding that "[t]he trial court may reject allegations that are contradicted by documents attached to the complaint").

(Mem. and Recommendation. P. 7 [Doc. 16]) Under the law of the case doctrine, the previous Order will govern the same issues in this case unless Plaintiff can show substantially different evidence from a subsequent trial, new controlling authority, or a clearly erroneous decision. Plaintiff filed an Amended Complaint alleging that the January 7, 2008 letter and the SMG create a contract between the parties. The Complaint does not raise any substantially different evidence regarding the letter. Nor does it cite any new controlling authority. This Court's previous determination that the January 7, 2008 letter was not a contract is the law of the case here.

The Court also finds that the SMG combined with the letter is not a contract. The SMG is included within the SMP. The SMP is a federally mandated document for the comprehensive management of shoreline activities on Lake Norman. The SMG includes guidelines subject to FERC's authority allowing Duke Energy to issue permits for docks and other recreational facilities on Lake Norman. Plaintiff did not negotiate or sign the SMG. Those guidelines were already in place at the time he received his permit. The SMG are not a contract between Plaintiff and Duke Energy. Consequently, Plaintiff has failed to allege a breach of contract claim and the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss," Doc. 22, be **GRANTED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED.**

Signed: January 26, 2021

David S. Cayer
United States Magistrate Judge